**UNITED STATES of America, Appellee,**

v.

**Darnell Sydney BOULT, Appellant.**

No. 89–2808.

United States Court of Appeals,
Eighth Circuit.

Submitted April 9, 1990.

Decided June 5, 1990.

Rehearing and Rehearing En Banc
Denied July 10, 1990.

---

**1138**

Scott E. Walter, St. Louis, Mo., for appellant.

David M. Rosen, St. Louis, Mo., for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and BRIGHT, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Darnell Boult appeals from the sentence imposed upon him after he pled guilty to a charge of wire fraud in violation of 18 U.S.C. § 1343 (1988). He argues that the district court[1] erred by adding two levels to his total offense conduct level under United States Sentencing Guideline Section 3A1.1, relating to vulnerable victims. Boult contends that this determination was clearly erroneous and that Guideline Section 3A1.1 is unconstitutionally vague. We affirm the sentence imposed by the district court.

Boult and co-defendant, Adrian Mullen, stipulated to the facts for sentencing purposes. In January 1989, Boult entered the General Welding Company in St. Louis, Missouri, and asked the owner, Harold Segal, for money. Segal gave Boult cash and Boult left. Thereafter, Segal received phone calls in which Boult, whom he knew as "Big Guy," requested more money. To induce Segal to pay, Boult concocted a variety of stories, including one in which Boult threatened to implicate Segal in a murder unless Boult was given money, and another in which Boult claimed that he needed additional money in order to retrieve the money Segal had previously given him. Segal was taken in by these stories, and between January and April of 1989, he emptied his business bank account and his IRA account by giving Boult $12,900 in cash and checks. After the initial contacts, Boult developed a pattern of sending Adrian Mullen or David Hedrick for the checks, which would be payable to one of the three men. In April, Segal told Boult that he had no more money. A few days later, on April 20, Boult called Segal saying that he had been kidnapped by two men who wanted $1,100 to release him; this demand was repeated in over thirty telephone calls made the following day by Boult, Mullen, and a man identifying himself as one of the kidnappers. These calls included one to Segal's wife threatening both her life and her husband's life if Segal failed to pay the ransom. On April 21, Segal went to his nephew, David Segal, in order to borrow the ransom money. David Segal, believing that his uncle was a victim of fraud, contacted the FBI, which began monitoring calls to Segal. At approximately 4:30 p.m. on April 21, Mullen arrived at Segal's business and said that the kidnappers would harm Boult, Mullen, and Segal unless the ransom money was paid. The FBI later arrested Mullen and Boult.

█ Boult argues that the clearly erroneous standard applies to a determination of the existence of a vulnerable victim,

1. The Honorable John F. Nangle, Chief Judge, United States District Court for the Eastern District of Missouri.

citing *United States v. Velasquez–Mercado*, 872 F.2d 632, 635 (5th Cir.1989), and *United States v. Mejia–Orosco*, 867 F.2d 216, 218 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). Our circuit has not yet determined the applicable standard, but it is evident that this is a factual determination reviewable under the clearly erroneous standard. *See Velasquez–Mercado*, 872 F.2d at 635; 18 U.S.C. § 3742(e) (1988).

■ Guideline Section 3A1.1 states that it applies where the defendant "knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." United States Sentencing Commission, *Guidelines Manual*, § 3A1.1 (Nov.1989).[2] Boult argues that there was nothing in the record to indicate Segal's particular vulnerability because: (1) it is impossible to find that Segal was more vulnerable than any other victim; (2) the record contains no evidence that Segal was physically or mentally handicapped; and (3) even though Boult was six-feet tall and weighed 260 pounds, there was no threat of force.

We reject Boult's arguments. The district court found that Segal was chosen because he was known by Boult and his associates, and because he would be an easy target for their fraud. Boult's Presentence Report recited the fact that Segal's brother had been killed in 1963 by a man who entered the store and asked for money; however, there is no evidence that Boult knew this. The district court supported its application of the Guideline by acknowledging Segal's age, his physical stature compared to that of Boult, and his prior exposure to Boult and Boult's associates. The district court made specific findings that Boult orchestrated the scheme, made the decision to choose Segal as a victim, initiated the contact with Segal and relied on the relative size difference between Boult and the victim.[3]

The Presentence Report disclosed a modus operandi by Boult to approach potential victims and test the victim's vulnerability to fraud by first requesting a token amount of money and, if successful, increasing monetary demands by successive requests. Boult followed this scenario with Harold Segal and in so doing, tested, recognized, and exploited the latter's vulnerability.

While there was no evidence that Segal was mentally handicapped, he did have a mental condition upon which Boult and the other defendants preyed. In sum, Boult has not convinced us that the district court was clearly erroneous when it found that Segal was an unusually vulnerable victim, because of his age and particular susceptibility in the circumstances of this case.

Boult also argues that the district court applied this Guideline erroneously by concluding that Segal was a vulnerable victim in relation to Boult but not in relation to Mullen. The application of this Guideline to Boult, not Mullen, is before us today. The district court findings are not clearly erroneous, and when combined with the court's observations concerning Segal, they support the application of this Guideline.

■ Boult next argues that the Guideline is unconstitutionally vague. He boldly asserts that although Segal presumably turned the money over to him out of fear, nothing in the record indicates that Segal's fear was different than the feeling experienced by any victim of extortion or fraud.

---

**2.** The Guideline provides that:

If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.

U.S.S.G. § 3A1.1.

**3.** During Boult's sentencing proceedings, the court noted that:

[I]t was apparent to Boult from his experience with Mr. Siegel [sic], et cetera, that he knew Siegel [sic] would be vulnerable and he was an unusually vulnerable witness [sic] due to his age and physical stature compared to Boult and, likewise, that Mr. Boult had known Seigel [sic] from previous associations and knew of his vulnerability and that will be made a part of my findings.

(Sentencing Tr. 29).

Boult also contends that Segal was not particularly vulnerable and, alternatively, that Boult did not know of such vulnerability if it existed. He also maintains that predicating a finding of vulnerability solely on age is erroneous. We are not convinced by Boult's arguments. The Guideline not only refers to unusual vulnerability due to age, but also to physical or mental condition, and to particular susceptibility to criminal conduct. Age is simply one of the factors to be considered. *See* U.S.S.G. § 3A1.1. Accordingly, we conclude that the descriptive phrases in the Guideline are not unconstitutionally vague.

Taken as a whole, the Guideline sufficiently defines a factual pattern to which it applies. We cannot conclude that it is so vague "that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Therefore, we believe that it "conveys [a] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Jordan v. De George*, 341 U.S. 223, 231–32, 71 S.Ct. 703, 707–08, 95 L.Ed. 886 (1951).

For the reasons stated above, we affirm the judgment of the district court.