**UNITED STATES of America, Appellee,**

v.

**Darrell J. BROWN, Appellant.**

**No. 91–1229.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1991.

Decided Nov. 5, 1991.

Thomas D. Carver, Springfield, Mo., argued, for appellant.

David C. Jones, Springfield, Mo., argued, for appellee.

Before LAY, Chief Judge, and BRIGHT and HENLEY, Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

Darrell J. Brown appeals from his conviction for forty-one counts of wire fraud under 18 U.S.C. §§ 1342, 1343 (1988), nineteen counts of mail fraud under 18 U.S.C. §§ 1341, 1342 (1988) and one count of obstruction of justice under 18 U.S.C. § 1503 (1988). All counts relate to Brown's alleged fraudulent receipt of thousands of dollars in benefits from the Veterans' Administration. Brown raises two issues on appeal: (1) insufficiency of the evidence

and (2) the district court[1] should have suppressed evidence of his physical condition and state of mind after March 1982. We reject these contentions and affirm.

## I. BACKGROUND

Darrell J. Brown is a partially disabled veteran. His mail and wire fraud convictions relate to false representations he made to the Veterans' Administration (VA) in order to secure a host of additional benefits. During VA physical examinations and by letter to VA officials, Brown claimed that he suffered from a complete, not partial, disability. He alleged that a lymphatic disorder deprived him of all use of his arms and legs, leaving him confined to a wheelchair.

Brown's actual disability dates back to May 15, 1959, four years after he received a discharge from the Navy. At this time, the VA granted him a thirty percent disability rating for a service-connected generalized lymphatic condition. After several unsuccessful petitions for increased benefits, Brown received a one hundred percent disability rating from the VA in October 1964.[2] He received VA aid and attendance benefits in 1971.

Brown requested additional disability compensation in 1980. He alleged that he had lost the use of both upper extremities and his right leg below knee level. After reviewing a medical examination conducted by Dr. Alice M. Savage, the VA upgraded Brown to R–1, the agency's second highest disability rating. The rating board concluded that Brown had lost the use of both upper and lower extremities due to lymphedema.[3]

Equipped with his new rating, Brown applied to the VA for an extensive array of additional benefits. He received a grant for specially adapted housing ($32,500 plus an $81,000 mortgage guaranteed by the VA), a vehicle allowance ($3,800) and a special clothing allowance (claiming his wheelchair caused his clothing to wear out quickly). Brown's monthly benefit package amounted to $3,764 per month at the time of his arrest. Had he retained a thirty percent disability rating, he would have received $253 per month.

Brown claims that he has suffered from a lymphatic disorder since 1954. He points to a March 1982 examination at a VA clinic, during which Dr. H. Richard McFarland made a diagnosis of extremity lymphedema with attending paralysis.[4] Dr. Rodney Jung, a specialist who examined Brown in 1990, testified that Dr. Savage found an absence of "pitting" during the 1981 exam, a condition caused by vascular-related swelling. This finding is significant, appellant contends, because it indicates that the swelling of his extremities stemmed from lymphatic blockage, not from vascular restriction.[5]

The Government concedes that Brown's condition merits a thirty percent disability rating. It claims, however, that Brown misrepresented the severity of his disabilities in order to secure additional benefits. In a January 30, 1982 letter to the VA, for example, Brown contended that he should

---

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

2. Surgeons removed lymph nodes from Brown's left armpit in the summer of 1964. At that time, he received a medical diagnosis of lymphadenopathy (localized swelling of the lymph nodes) with lymphadenitis (inflammation) in the right upper and lower extremities. Trial Tr., Vol. II at 130. Brown appeared personally before the rating board in October 1964. He was then evaluated by Dr. Beardsley, who found "three plus" edema of the right arm and leg. Brown's general diagnosis at this time was lymphedema. *Id.* at 132. The rating board granted Brown a one hundred percent disability rating effective July 12, 1964.

3. Elsewhere in the record, lymphedema is defined as swelling of the extremities due to lymphatic blockage. Trial Tr., Vol. II at 122.

4. This physician went on to question the paralysis, but confirmed Brown's need for aid and attendance benefits.

5. On cross-examination, however, Jung conceded that Dr. Savage found "no marked pitting" in Brown's biceps. Trial Tr., Vol. IV at 650. Jung also stated on cross that Brown displayed no symptoms of prolonged lymphedema and that the swelling could have been induced by wrapping.

receive the agency's highest disability rating. He stated that his condition left him so "helpless" that his wife had to sign his name for him, catheterize him and roll him on his side so that he could use a bed pan.

At trial, the Government called over thirty lay and medical witnesses, including Brown's ex-wives. The cumulative testimony provided damning evidence of the manner in which Brown deceived his examining doctors into thinking he suffered from a paralyzing disability.

The appellant took the stand to testify in his own defense. On cross-examination, Brown conceded that he made false statements in numerous applications for VA and Social Security disability benefits. He admitted that he enjoyed intermittent use of his extremities between 1971 and 1980. Brown also conceded that he concealed his employment record and non-disabled condition from the VA.

At the close of the evidence, the jury returned a guilty verdict on sixty-one of the sixty-two counts. The district judge sentenced Brown to concurrent terms of fifty-seven months and a three year term of supervised release. This appeal followed.

## II. DISCUSSION

We turn to Brown's allegations of error on appeal.

### A. Sufficiency of the Evidence

First, Brown argues that the prosecution introduced insufficient medical evidence to support the jury's verdict. Brown asserts that the voluminous record does not contain medical evidence of his actual physical condition in 1981 and 1982, when he received his last VA disability exams.[6] The physicians who examined Brown in 1990 gave no opinion as to his physical condition in 1982. As a result, he contends, no medical basis exists for evaluating the allegation of fraud and no medical evidence supports the conviction.

Brown also alleges that the prosecution presented insufficient non-medical evidence to support his conviction. Eight witnesses knew Brown before 1982.[7] The testimony of these witnesses, Brown maintains, fails to establish guilt conclusively, absent any medical foundation for the fraud allegation.

We do not delve into uncharted territory during our review for sufficiency of the evidence. We view the evidence in the light most favorable to the government, grant the government all reasonable inferences, and uphold the conviction if we find substantial evidence to support the verdict. *E.g., United States v. Carwell,* 939 F.2d 545, 546 (8th Cir.1991); *United States v. Burks,* 934 F.2d 148, 151 (8th Cir.1991); *United States v. Hankins,* 931 F.2d 1256, 1258 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 243, 116 L.Ed.2d 198 (1991); *United States v. Marshall,* 922 F.2d 479, 479 (8th Cir.1990); *United States v. Williams,* 897 F.2d 1430, 1432 (8th Cir. 1990); *United States v. Marin–Cifuentes,* 866 F.2d 988, 992 (8th Cir.1989). The prosecution may prove essential elements of the crime by direct and circumstantial evidence. *Marin–Cifuentes,* 866 F.2d at 992. We "will reverse only if we conclude that a reasonable fact-finder could not have found guilt beyond a reasonable doubt." *United States v. Gooden,* 892 F.2d 725, 729 (8th Cir.1989) (citing *United States v. Davis,* 785 F.2d 610, 619 (8th Cir.1986)), *cert. denied,* —— U.S. ——, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990).

In order to prove mail fraud under 18 U.S.C. § 1341, the government must establish: (1) a scheme to defraud and (2) the use of the mails in furtherance of that scheme. *United States v. Urban,* 746 F.2d 1345, 1346 (8th Cir.1984) (per curiam). The government bears the burden of proving

---

6. Brown contends that the VA medical exams in 1982 were "deficien[t]." Appellant's Br. at 35. Dr. McFarland, who conducted an examination pursuant to Brown's unsuccessful request for R–2 benefits, did not remove appellant's bandages. Similarly, Dr. Savage merely measured Brown's limbs. *Id.* at 34.

7. These witnesses included two of Brown's ex-wives, Pamela McCollum and Cindy Brown, and his in-laws (the Swanbergs).

the alleged mail fraud beyond a reasonable doubt. *Northcraft v. United States,* 271 F.2d 184, 187 (8th Cir.1959). In order to prove wire fraud under 18 U.S.C. § 1343, the government must establish a scheme to defraud and an interstate call made in furtherance of that scheme. *Urban,* 746 F.2d at 1346.

■ Pamela McCollum, Brown's wife from 1964 to 1974, and Cindy Brown, the appellant's wife from 1977 to 1986, testified at trial that they wrote to the VA at Brown's request, falsely stating that he could not clothe, feed or bathe himself. Both stated that Brown frequently worked under a false name and social security number in order to avoid detection. Cindy Brown testified that Brown wrapped his limbs before disability exams to induce swelling. He also soaked his feet and hands in order to scrape off callouses.

In addition to the ex-wives, several witnesses, including one set of his in-laws, testified that they never saw Brown use a wheelchair. Nor did they know him to have suffered from the complete loss of use of his extremities. A number of witnesses testified that they observed Brown operate a chain saw and carry heavy loads of wood after 1982. Two witnesses, Rolland T. Fredrichs and Melissa Shaver, told the district court that Brown asked them to testify to his condition as a paraplegic. Fredrichs and Shaver each testified that they saw Brown cut wood and mow the lawn during the late 1980s.

The Government presented additional witnesses to bolster its theory of fraud. Bobby Jean Hamsher, an employee of the Social Security Administration, observed Brown during and after his November 15, 1982 continuing disability examination by the agency. During the interview, Brown claimed that he could not use his arms and legs. He moved around only by using a wheelchair. After the exam, Hamsher watched Brown's wife wheel him out to the parking lot. Brown then stood up, threw the wheelchair in the back of the van, climbed into the driver's seat and drove away.

The Government also called Dr. Alistair Douglas Haddow, a specialist in internal medicine and infectious diseases. Dr. Haddow examined Brown in March 1990. He found that Brown had minimal, not disabling, swelling in both hands and good muscle strength. Haddow testified that Brown could have created his symptoms by wrapping his limbs in order to induce swelling. Haddow also testified that lymphedema of the type and severity claimed by Brown would permanently impair its victim. Once the swelling develops, it does not abate.

Viewed in the light most favorable to the Government, the prosecution introduced overwhelming evidence against appellant. The claimed error lacks any merit.

Appellant raises two additional issues within his generalized appeal for insufficiency of the evidence. First, Brown contends that the evidence of his post–1982 physical condition has no relevance to his state of mind on the date of his last VA exam in March 1982. The minimal evidence of his pre–1982 physical condition and state of mind, Brown claims, fails to support the verdict. For the reasons discussed below in section II.B, we decline to adopt this position.

■ Brown next argues that the conviction on one count of obstruction of justice must fail for insufficiency of the evidence. Brown's conviction on this count rested primarily on the testimony of Melissa Shaver. Shaver told the district court that Brown asked her to testify falsely on his behalf. This testimony supports the conviction. *See United States v. Slavens,* 746 F.2d 1338, 1340–41 (8th Cir.1984) (testimony of a single witness sufficient to support conviction under § 1503 for obstruction of justice). Accordingly, we affirm the conviction for obstruction of justice.

### B. Admissibility of Post–1982 Non-Medical Testimony

Brown contends that the district court clearly abused its discretion by denying a pre-trial motion in limine to exclude all testimony about his physical condition and state of mind after his last VA exam in

March 1982.[8] More precisely, Brown first claims that "no conceivable nexus" links the alleged fraudulent act in 1982 to the post–1982 non-medical testimony. He argues that the district court should have excluded this testimony as irrelevant under Rules 401 and 402 of the Federal Rules of Evidence.

▮ General decisions as to relevance, prejudice and the admissibility of prior bad acts rest within the sound discretion of the trial court. *See, e.g., United States v. Barrett,* 937 F.2d 1346, 1348 (8th Cir.) (relevance and Rule 403), *cert. denied,* —— U.S. ——, 112 S.Ct. 322, 116 L.Ed.2d 263 (1991); *United States v. Drew,* 894 F.2d 965, 969 (8th Cir.) (Rule 404(b)), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990); *United States v. Marshall,* 683 F.2d 1212, 1216 (8th Cir.1982) (Rules 403 and 404(b)).[9] We reverse only where the challenged evidence has no bearing on any of the issues before the court. *Marshall,* 683 F.2d at 1215.

▮ Here, no doubt exists as to the relevancy of the questioned evidence. Medical testimony at trial established that the disability claimed by appellant, if legitimate, would have created permanent impairment. Non-medical testimony about Brown's ability to walk, chop wood and mow the lawn after 1982 bore on the falsity of his representations to VA officials and physicians during the preceding years. *Cf. United States v. Abodeely,* 801 F.2d 1020, 1025 (8th Cir.1986) (evidence of receipt of income from gambling and prostitution relevant in tax evasion case to show unreported source of income). The challenged testimony relates directly to a material charge in the indictment, that Brown devised a scheme to defraud the VA for the purpose of obtaining benefits. *United States v. Campbell,* 937 F.2d 404, 406 (8th Cir.1991). If appellant had suffered from the permanent one hundred percent disability for which he received compensation throughout the 1980s, he would not have experienced the intermittent periods of full mobility which, according to the testimony at trial, allowed him to conduct a relatively non-impaired life.

Brown also argues that even if the post–1982 non-medical testimony were relevant, the district court should have excluded it as unduly prejudicial under the balancing test in Federal Rule of Evidence 403.[10] The challenged testimony strikes us as highly probative of Brown's fraudulent receipt of benefits. *Cf. United States v. Zimmerman,* 832 F.2d 454, 458 (8th Cir.1987) (per curiam) (tape recording from 1982 probative of overt acts from 1979 to 1980 where the alleged conspiracy ran from 1979 to 1986). We see no basis for concluding that the district court abused its discretion in admitting the challenged testimony. We reject appellant's claim to the contrary.

▮ Finally, Brown contends that the district court should have excluded the post–1982 non-medical testimony under Federal Rule of Evidence 404(b). Evidence of a person's character or a trait of character is inadmissible to prove action in conformity therewith on a particular occasion. *See* Fed.R.Evid. 404(a). Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts" is equally inadmissible to show action in conformity therewith, but a court may admit it "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b).

---

8. Brown sought to suppress this testimony as highly prejudicial and irrelevant to the allegations of fraud in the Government's indictment.

9. Where, however, an appellant raises an objection on appeal that the district court did not have an opportunity to reach, we review under the plain error standard. *United States v. Ferguson,* 776 F.2d 217, 224 (8th Cir.1985), *cert. denied,* 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986). The record indicates that Brown did not raise a Rule 404(b) objection in his motion in limine. Because the district court did

not abuse its discretion in admitting the post–1982 non-medical testimony, its admission does not constitute plain error.

10. Federal Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

To qualify for admission under Rule 404(b), the evidence must be (1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged. *Campbell,* 937 F.2d at 406 (citing *United States v. Mothershed,* 859 F.2d 585, 588 & n. 2 (8th Cir.1988)).

 Here, the challenged testimony bore strongly on Brown's motive and intent to defraud the VA. First, the challenged testimony is relevant to his intent to defraud because the mail and wire fraud statutes which he stands convicted of violating contain intent and knowledge requirements. *See* 18 U.S.C. §§ 1341, 1343.[11] *See also Campbell,* 937 F.2d at 407 (challenged testimony relevant to intent where statutes required intentional or knowing effort to defraud). The post-March 1982 non-medical testimony bears directly on Brown's motive. It illuminates the extent to which he exaggerated the severity of his disability in order to secure a more generous benefit package from the VA. *Cf. United States v. Ratliff,* 893 F.2d 161, 165 (8th Cir.) (testimony of witness not named as victim of fraud had value "as evidence of appellant's stratagem"), *cert. denied,* ── U.S. ──, 111 S.Ct. 115, 112 L.Ed.2d 85 (1990). Second, the overwhelming evidence against Brown clearly satisfies the *Mothershed* preponderance requirement. Third, as discussed previously, the probative value of the challenged post–1982 non-medical testimony exceeds its prejudicial effect. Fourth, the post–1982 acts on which the challenged testimony focused were similar in kind and close in time to the crime charged. The indictment charged appellant with a continuing fraud. Brown received the full complement of benefits up until the date of his arrest. The non-medical post–1982 testimony thus bore directly on Brown's continuing intent and motive to defraud the VA and qualified for admission under Rule 404(b). Finding no abuse of discretion, we affirm the evidentiary rulings of the district court and the convictions on all counts.

### III. CONCLUSION

We affirm.

---

**11.** Section 1341 provides, in relevant part:

Whoever, having devised or *intending* to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... *for the purpose of* executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or *knowingly causes* to be delivered by mail according to the direction thereon....

18 U.S.C. § 1341 (emphasis added).

Section 1343 provides, in relevant part:

Whoever, having devised or *intending* to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds *for the purpose* of executing such scheme or artifice....

18 U.S.C. § 1343 (emphasis added).