**UNITED STATES of America, Appellee,**

v.

**Glenn A. FORTENBERRY, Appellant.**

No. 92–1543.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 5, 1992.

Decided Aug. 25, 1992.

Lee Lawless, Federal Public Defender, St. Louis, Mo., argued (David Freeman, on the brief), for appellant.

Mark Eggert, Asst. U.S. Atty., St. Louis, Mo., argued, for appellee.

Before McMILLIAN, BOWMAN and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Glenn A. Fortenberry appeals from a final judgment entered in the United States District Court[1] for the Eastern District of Missouri, upon a jury verdict, finding him guilty of one count of attempt to possess with the intent to distribute cocaine in violation of 21 U.S.C.A. §§ 841(a)(1) & 846 (West 1981 & Supp.1992). The district court sentenced Fortenberry to 69 months imprisonment, four years supervised release, and a special assessment of $50.00. For reversal, Fortenberry argues that there was insufficient evidence to prove that he knowingly or intentionally attempted to possess cocaine. For the reasons discussed below, we affirm the judgment of the district court.

On September 22, 1988, a postal employee went to 1358 Semple in St. Louis to deliver an express mail package. The postal employee believed that the house was vacant, so he returned the package to the post office. Also on September 22, 1988, several telephone calls were made to the post office inquiring about an express mail package sent to 1358 Semple. The telephone calls and vacant house led to a further investigation of the package. Postal Inspector Dennis Hearne investigated the return address in Los Angeles and found that no one named "Andrew Wallace" (the name on the return address) lived at that address. Inspector Hearne then had a trained narcotics dog sniff the package; the dog reacted as if the package contained illegal drugs. A search warrant for the package was then obtained.

When the package was opened, 999.06 grams of 96 percent pure cocaine were found. Most of the cocaine was removed and a transmitting device was placed in the box which would alert the postal inspectors when the box was opened. A postal inspector, dressed as a letter carrier, then made a controlled delivery to the Semple address.

When the delivery was made, the house was under surveillance by law enforcement officers stationed at five positions.

The house at 1358 Semple was owned by Fortenberry and his wife and it was undergoing rehabilitation at the time. Only one room in the house was livable.

When the postal inspector approached the house Fortenberry opened the door stated "That's for me."[2] Fortenberry signed for the package and took it inside to a second-floor room. According to telephone records later obtained by the government, about an hour before the package was delivered and again twenty-five minutes after receiving the package, Fortenberry, the only person in the house at the time, telephoned an address in Los Angeles located approximately one block from the street address on the package's return address.

The house on Semple was kept under constant surveillance, and no one left or entered the house until 10:00 p.m. when Inspector Hearne decided to enter the house although the beeper device had not been activated, indicating that the package had not yet been opened. Inspector Hearne knocked on the door and Fortenberry answered. Inspector Hearne told Fortenberry that he was under investigation for narcotic trafficking and that a package containing cocaine had been delivered to his house. Fortenberry allowed the inspectors to enter and search his house. The unopened package, an O'Haus triple-beam balance scale, sandwich-sized plastic bags, a telephone pager, and a rifle were recovered.

After the search Fortenberry voluntarily accompanied Inspector Hearne to Hearne's office. Fortenberry was given his *Miranda* rights and agreed to talk.[3] Inspector Hearne testified that Fortenberry stated that he had accepted delivery of the

1. The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

2. According to the government's theory of the case, this was a statement made without looking at the label, thus supporting the inference that Fortenberry was expecting the package. According to Fortenberry, his words constituted a question, supporting the inference that he was not expecting the package.

3. No challenge is made to voluntariness of any of Fortenberry's statements.

package for a friend named Laura, he knew the package contained cocaine, and he had made telephone calls to the post office regarding the package.

At trial, Fortenberry testified and admitted signing for the package, but testified that he was not aware that a package was going to be delivered. He testified that he had no knowledge that the package contained cocaine and denied making any such statements to Inspector Hearne. He said that he used the rifle for hunting and the pager in his construction business. Fortenberry testified that the scale and plastic bags did not belong to him and he did not know how they got into his house. The jury found him guilty, and this appeal followed.

Fortenberry argues that there was insufficient evidence to prove he knew that the package contained drugs and therefore that he knowingly or intentionally attempted to possess with the intent to distribute cocaine under 21 U.S.C. § 841(a)(1). He argues that with the exception of his alleged statements to Inspector Hearne, all the evidence is either consistent with his theory of innocence or irrelevant. Fortenberry argues that his acceptance of the package does not show he knew it contained cocaine. Fortenberry states that his comment, "That's for me", was a question and showed that the package was not for him. According to Fortenberry, his cooperation with the authorities and the fact that he never opened the package also showed that he was not involved with drug trafficking. Second, Fortenberry argues that all the "tools" of the drug trade have innocent uses and that the scale and plastic bags did not belong to him and he did not know they were in his house. As to the telephone calls to Los Angeles, Fortenberry argues that he has friends or relatives who live there whom he calls. Finally, concerning the alleged statements to Inspector Hearne, Fortenberry argues that Inspector Hearne's testimony is so flawed that it is entitled to no weight. Fortenberry argues that Hearne did not ask him to sign a waiver form, although he admits that he was given his *Miranda* rights, and did not use a statement form, but instead wrote down his own notes.

The government argues that the evidence is sufficient. The government argues that Fortenberry's knowledge that the package contained cocaine is supported by his statements to Inspector Hearne and his comment "That's for me" when the inspector approached the door to deliver the package. The government argues that because the only inhabited room in the house does not overlook the front of the house, and because Fortenberry opened the door before the postal inspector rang the doorbell, he must have been expecting the package. Additionally, the government points to the telephone calls an hour before and twenty-five minutes after the package was delivered to an address one block from the return address on the package. The government also presented expert testimony at trial regarding Los Angeles as a source city for narcotics and that the items found in the house are paraphernalia commonly used in drug trafficking.

Second, the government argues that there was sufficient evidence that Fortenberry intended to distribute the cocaine. The government points to Fortenberry's statement that he was going to give the package to Laura. Additionally, according to the government, the large quantity of high purity cocaine and the equipment present in the house show an intent to distribute. The government also argues that Fortenberry's "story" at trial was inconsistent.

In reviewing Fortenberry's claim of insufficient evidence, we view the evidence in the light most favorable to the jury verdict and grant the government all reasonable inferences. *E.g., United States v. Brown,* 948 F.2d 1076, 1079 (8th Cir.1991). We will reverse only if a reasonable factfinder could not have found guilt beyond a reasonable doubt. *Id.*

This case turned on credibility. The jury had to determine whose story to believe, Fortenberry's or Inspector Hearne's. The jury apparently believed Inspector Hearne and we hold that there was sufficient evidence for the jury to do so. Fortenberry's

comment "That's for me" could have been found to be a statement or a question and the jury by its verdict accepted it as a statement. While Fortenberry is correct that the items found in his home all have innocent uses, it was equally possible for the jury to conclude that they were drug paraphernalia and used in furtherance of a crime. Fortenberry essentially wants this court to ignore Inspector Hearne's testimony because he says it lacks all credibility. The jury heard and observed Inspector Hearne testify, and it was for the jury to determine how much weight to give Inspector Hearne's testimony. *See, e.g., United States v. Martinez*, 958 F.2d 217, 218 (8th Cir.1992).

Accordingly, we affirm the judgment of the district court.