UNITED STATES of America, Appellee,

v.

Leonard James RAVOY, Appellant.

UNITED STATES of America, Appellee,

v.

Barbara Jean RAVOY, a/k/a Barbara J. Morgan, t/n Barbara Jean Nash, Appellant.

Nos. 92–2661, 92–2695.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 18, 1993.

Decided June 7, 1993.

Paul C. Engh, Minneapolis, MN, argued for appellant, Leonard James Ravoy.

Scott F. Tilsen, Minneapolis, MN, argued for appellant, Barbara Jean Nash.

Jeffrey S. Paulsen, Minneapolis, MN, argued (Thomas B. Heffelfinger and Jeffrey S. Paulsen on the brief), for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Barbara Jean Nash pled guilty to equity skimming in violation of 12 U.S.C. § 1709–2. A jury convicted her codefendant, Leonard James Ravoy, of equity skimming and of mail fraud in violation of 18 U.S.C. § 1341. Both Nash and Ravoy appeal the specific terms and conditions of their sentences. In addition, Ravoy challenges the sufficiency of the evidence supporting his conviction. We affirm in part, reverse in part, and remand for resentencing.

## I. Facts

In 1986, Barbara Jean Nash,[1] a real estate agent, devised a fraudulent scheme to take advantage of depressed real estate prices on houses listed for sale where the mortgage owed by the home owners exceeded the value of the property. Soon thereafter, she married codefendant Leonard James Ravoy who, with knowledge of what she had done, then joined her throughout the remainder of the fraudulent scheme. The scheme began with purchasing residences that had a selling price lower than the current balance on the property's existing mortgage. At closing, Nash and/or Ravoy would assume the existing mortgage and, in all but one case, the sellers would pay them a cash "buy-down" to account for the difference between the lower value of the residence and the higher amount of the assumed existing mortgage. In addition to collecting the cash "buy-downs," Nash also collected real estate commission fees on some of the ten sales.

After obtaining possession, Nash and Ravoy would rent the residences and collect the monthly rent. During that same period of time, they never made a mortgage payment on any of the properties. Eventually, the lenders, including the Federal Savings and Loan Insurance Corporation (FSLIC), foreclosed on the residences, and the mortgage insurers, including the Federal Housing Administration (FHA) and the Veterans Administration (VA), ended up losing a substantial amount of money when the properties failed to resell for the combined amount of the existing mortgage and the foreclosure expenses.

In 1991, a grand jury indicted both Nash and Ravoy on six counts of mail fraud in violation of 18 U.S.C. § 1341 and on one count of equity skimming in violation of 12 U.S.C. § 1709–2. Nash pled guilty to the equity skimming count in return for testifying against Ravoy and for the dismissal of the six mail fraud counts. A jury convicted Ravoy of the six counts of mail fraud and of the one count of equity skimming.

At sentencing, the district court granted the government's U.S.S.G. § 5K1.1 motion to depart downward for Nash's substantial assistance and sentenced her to a six-month term of imprisonment, one year of "active supervised release" with the first six months of active supervised release being spent in home confinement, four years of "inactive supervised release," $5,000 in restitution, and a $50 special assessment. The district court sentenced Ravoy to a 24–month term of imprisonment, three years of "active supervised release," two years of "inactive supervised release," $9,000 in restitution, and a $350 special assessment. Both defendants appeal the specific terms and conditions of their sentences. Ravoy also attacks the sufficiency of the evidence supporting his convictions.

## II. Discussion

### A. Sentencing Guideline § 2F1.1—Loss Calculation

■ Both Nash and Ravoy contend that the district court erred in finding that the amount of loss resulting from their equity skimming scheme totalled more than $200,-000. Specifically, they contend that the loss resulting from one of the residences, the Heath Avenue South property, should not be counted in the loss total because this property was subsequently resold by them to Steven Pennig, whose eventual failure to pay the mortgage resulted in an FHA foreclosure. In effect, Nash and Ravoy argue that they should not be punished for another person's inability to make the monthly mortgage payments that resulted in foreclosure. We disagree.

The district court found that the financial loss resulting from the Heath Avenue South property should be included in the loss calculation for several reasons. First, the defendants did "skim the equity" from the Heath Avenue South property by receiving a cash "buy-down." *See* Ravoy's Sentencing Tran-

---

1. This is the defendant's present name. During her participation in the crime to which she pled guilty, she changed her maiden name of Barbara J. Morgan to her married name of Barbara Jean Ravoy after marrying the codefendant Leonard James Ravoy. She subsequently was divorced from Ravoy, remarried, and changed her name to Barbara Jean Nash. In this opinion, we will refer to her as Nash.

script (Ravoy S.Tr.) at 21. Second, the defendants rented the property and received the monthly rent payments. *Id.* Third, the defendants never made a mortgage payment on the Heath Avenue South property. *Id.*

After thoroughly reviewing the trial record and the sentencing transcripts, we conclude that the district court did not clearly err in finding that the amount of loss to the FHA from the Heath Avenue South property should be included in the loss calculation. *See United States v. Mills,* 987 F.2d 1311, 1315 (8th Cir.1993) (the loss calculation under U.S.S.G. § 2F1.1 is a factual question to be reviewed under the clearly erroneous standard). While we may have come to a different determination were we the fact finder, we cannot say with firm conviction that a mistake was made. "The focus for sentencing purposes under § 2F1.1 should be on the amount of possible loss the defendant[s] attempted to inflict on the victim." *United States v. Prendergast,* 979 F.2d 1289, 1292 (8th Cir.1992) (citations omitted). But for the sale to Pennig, there is little doubt that when the defendants bought the Heath Avenue South property they intended to treat it the same way as the other properties, i.e., to never pay the mortgage and force the lenders to foreclose. The loss the defendants intended to inflict at the time they skimmed the property was the loss ultimately sustained. Consequently, after adding the loss from the Heath Avenue South property to the undisputed losses resulting from the other residences included in the defendants' scheme, the district court correctly found that the amount of loss totalled more than $200,000. In determining the amount of loss, the trial court need not do so with precision. Application note 8 to U.S.S.G. § 2F1.1 only requires the trial court to make a reasonable estimate of the loss, given the available information, and application note 2 to U.S.S.G. § 2B1.1 permits the trial court to consider the scope of the operation in determining loss. With those added considerations, all of which the trial court took into its judgment, its finding of fact as to the amount of loss must be affirmed.

B. *Sentencing Guideline § 3A1.1—Vulnerable Victim*

Both Nash and Ravoy contend that the district court erred in assessing a two-level increase pursuant to U.S.S.G. § 3A1.1. We agree.

■ The district court found that Nash and Ravoy preyed on vulnerable victims under § 3A1.1 because of the victims' "distressed financial circumstances." *See* Ravoy S.Tr. at 24; *see also* Nash's Sentencing Transcript (Nash S.Tr.) at 35. The district court also found that the victims were mostly low-income people who had fallen on hard economic times. *Id.* The district court added a two-level increase to the base offense level, because in its view the sellers were targeted because of their financial situation. *Id.*

■ A vulnerable victim finding is a factual determination reviewed under the clearly erroneous standard. *United States v. Boult,* 905 F.2d 1137, 1139 (8th Cir.1990). Section 3A1.1 states:

If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.

U.S.S.G. § 3A1.1 (1991). This guideline is properly applied in cases where the criminal act is targeted against the young, the aged, or the handicapped, or against a victim having a physical or mental vulnerability. *United States v. Paige,* 923 F.2d 112, 113–14 (8th Cir.1991) (citation omitted). In addition, in order for this guideline to apply, a defendant's "choice" of victim must show the " 'extra measure of criminal depravity which § 3A1.1 intends to punish more severely.' " *United States v. Callaway,* 943 F.2d 29, 31 (8th Cir.1991).

After thorough review, we conclude that the district court clearly erred in finding the sellers to be vulnerable victims under § 3A1.1. In our opinion, the sellers in this case were not "otherwise particularly susceptible to the criminal conduct" pursuant to § 3A1.1. The record does not show that the sales prices were less than the then fair market value for the properties. Nor does

the record show that the sellers were coerced in any way by the defendants. Nor does it appear that any seller has been sued for a deficiency judgment. The properties were listed in the multiple listing service as ones which could be purchased for less than the mortgage balance, making a cash "buy-down" available to any interested buyer. Furthermore, the record does not support a finding that Nash and Ravoy targeted the sellers in this case because of their age or any mental or physical handicaps they may have had. *Id.* Three sellers testified at trial. Each of them knew at the time of the sale that they remained liable if Ravoy did not make the mortgage payments. One of them paid extra money for processing a release from liability form so he would no longer be liable on his mortgage but Ravoy failed to complete the necessary financial statements for the lenders to review. In Enid Donahue's case, she sold her home to the defendants for $14,000 more than its existing mortgage balance and took a contract for deed from them for the equity. She lost her equity when the defendants failed to pay the contract payments to her and defaulted on the mortgage. While she was a victim of the defendants' fraud and lost all of her life's savings to the criminal conduct, she was not "otherwise susceptible" to the defendants' criminal scheme because of her financial condition. She, and the other sellers, did not have the particularized vulnerability this adjustment requires. Accordingly, we reverse the district court's assessment of a two-level increase under § 3A1.1 and remand with instructions to reduce the defendants' adjusted offense level in a manner consistent with this opinion.

### C. *Sentencing Guideline § 2F1.1(b)-(2)(A)—More than Minimal Planning*

Ravoy contends that the district court erred in finding that the scheme involved more than minimal planning and, therefore, in assessing a two-level increase pursuant to U.S.S.G. § 2F1.1(b)(2)(A). Specifically, he contends that the crimes of mail fraud and of equity skimming involve extensive planning, and thus, an additional two-level increase for "more than minimal planning" would constitute "double counting." We disagree.

■ The Sentencing Guidelines define "more than minimal planning" as "more planning than is typical for commission of the offense in a simple form" and is deemed present "in any case involving repeated acts over a period of time." U.S.S.G. § 1B1.1, comment. (n.1(f)). The district court found that Ravoy's scheme involved more than minimal planning because the scheme consisted in part of purchasing ten residences over a 16–month period of time. *See* Ravoy S.Tr. at 24–25. In addition, Ravoy handled most all of the rent payments and continually covered up his true intentions from the sellers, the subsequent renters, and the lenders. *Id.; see also* Nash S.Tr. at 35–36.

We conclude that the record supports the finding that the scheme involved more than minimal planning. Accordingly, we hold that the district court did not clearly err in assessing the two-level upward adjustment under § 2F1.1(b)(2)(A). *See United States v. Starr*, 986 F.2d 281, 282 (8th Cir.1993) (whether defendant engaged in more than minimal planning is a factual finding reviewed under the clearly erroneous standard).

■ Alternatively, we note that the trial court found both prongs of specific offense characteristic § 2F1.1(b)(2) (more than minimal planning *or* a scheme to defraud more than one victim) to exist. Either finding would justify the two-level increase, and the district court's multiple victims finding is certainly not clearly erroneous.

### D. *Term of Supervised Release*

■ Both Nash and Ravoy contend that the district court erred in imposing a term of "inactive supervised release" because it would subject them to supervised release for longer than the maximum period permitted by the United States Code and the Sentencing Guidelines. We agree.

During sentencing, the district court imposed a five-year term of supervised release on Nash, which consisted of one year of "active supervised release" with the first six months being served in home confinement and four years of "inactive supervised re-

lease." *See* Nash's Judgment and Conviction, at 3. Similarly, the district court imposed a five-year term of supervised release on Ravoy, which consisted of three years of "active supervised release" and two years of "inactive supervised release." *See* Ravoy's Judgment and Conviction, at 3. In both instances, the district court specifically indicated that the period of "inactive supervised release" is strictly for the purposes of administering and monitoring the repayment of both Nash's and Ravoy's restitution obligations. *See* Nash's S.Tr. at 42–44; *see also* Ravoy's S.Tr. at 37–40.

The maximum statutory term of imprisonment for Ravoy's mail fraud is five years. *See* 18 U.S.C. § 1341. It is a Class D felony, *see* 18 U.S.C. § 3581(b)(4), and the maximum term of supervised release authorized under the United States Code and the Sentencing Guidelines which could be imposed on Ravoy is three years. *See* 18 U.S.C. § 3583(b)(2) and U.S.S.G. § 5D1.2(b)(2).

Because the fraudulent scheme was conducted from September 1986 to December 1987, the maximum statutory term of imprisonment for equity skimming that both Nash and Ravoy faced is three years. *See* 12 U.S.C. § 1709–2 (the 1988 amendment to § 1709–2 increased the maximum term of imprisonment from three years to five years). Therefore, their crimes of equity skimming are Class E felonies, *see* 18 U.S.C. § 3581(b)(5), and the maximum term of supervised release authorized under the United States Code and the Sentencing Guidelines that could be imposed on Nash and Ravoy for their convictions of equity skimming is one year. *See* 18 U.S.C. § 3583(b)(3) and U.S.S.G. § 5D1.2(b)(3).

The government argues that the district court had the authority to impose consecutive terms of supervised release. Under the government's theory, the district court could have imposed a total of 19 years of supervised release on Ravoy based on the his seven counts of conviction; each one of the six counts of conviction for mail fraud carries a maximum three-year term of supervised release, and the one count of conviction for equity skimming carries a maximum one-year term of supervised release. Hence, the government contends that the five-year term of supervised release actually imposed on Ravoy, even though two of the five years were for "inactive supervised release," was well within the statutory maximum term of supervised release available to the district court. We disagree. The government's argument is barred by *United States v. Gullickson*, 982 F.2d 1231, 1235–36 (8th Cir. 1993), in which this court held that 18 U.S.C. § 3624(e) "unambiguously states that terms of supervised release on multiple convictions are to run concurrently."

■ Based on *Gullickson*, which is binding authority on this panel, on *United States v. Saunders*, 957 F.2d 1488, 1494 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 256, 121 L.Ed.2d 187 (1992), which held that a district court may not impose a term of supervised release in excess of the statutory maximum, and on the plain, unambiguous language of 18 U.S.C. § 3583(b) and U.S.S.G. § 5D1.2, we conclude that the district court exceeded its jurisdiction in imposing the term of "inactive supervised release" on both Nash and Ravoy. The imposition of the "inactive supervised release" would subject both Nash and Ravoy to a period of supervised release longer than the maximum period permitted by the United States Code and the Sentencing Guidelines. In addition, there is no authority supporting a sentencing judge's imposition of a term of "inactive" supervised release. The level of intensity of the supervision of a defendant on supervised release is usually a function of the supervising probation officer's discretion. We have no doubt that a district court has the authority to direct its probation officers on how intensely to supervise a defendant's term of supervised release, but the sanction created by the statute is "supervised release," without subdistinctions of "active" and "inactive," and its length is limited by the statute. We therefore vacate the period of "inactive" supervised release of both Nash's and Ravoy's sentences and remand for resentencing consistent with the statute. We note that the district judge's decision to give the defendant Ravoy as much as five years time to make restitution can be implemented by an order entered pursuant to 18 U.S.C. § 3663(f) and

enforced by the court's contempt power after his shorter term of supervised release has expired. Because the defendant Nash's restitution obligation is based on the Sentencing Guidelines as opposed to the statute (18 U.S.C. § 3663 does not authorize restitution for Title 12 violations), her restitution period is limited by the statutory length of her supervised release period.

### E. *Criminal Intent—Sufficiency of the Evidence*

■ Finally, Ravoy argues that there was not sufficient evidence to prove that he acted with the requisite level of criminal intent to commit mail fraud and equity skimming. In reviewing Ravoy's claim of insufficient evidence, we must "view the evidence in the light most favorable to the jury verdict and grant the government all reasonable inferences." *United States v. Fortenberry,* 973 F.2d 661, 663 (8th Cir.1992) (citation omitted). "We will reverse only if a reasonable factfinder could not have found guilt beyond a reasonable doubt." *Id.*

After reading the transcript of the entire trial, we conclude that there was sufficient evidence to uphold the jury's verdict. Ravoy testified and presented his case to the jury. The jury listened to all of the evidence, deliberated, and returned guilty verdicts on all of the counts. The question of intent is a quintessential jury issue, and because there is ample evidence to do so, we uphold the verdict.

### III. CONCLUSION

We affirm the district court's calculation of loss and the corresponding seven-level increase to Nash's and Ravoy's base offense levels. We also affirm the district court's finding of "more than minimal planning" and the corresponding two-level increase to Ravoy's base offense level. We affirm the jury's finding that Ravoy acted with the requisite level of criminal intent in committing the crimes of mail fraud and of equity skimming. We reverse the district court on its imposition of the vulnerable victim adjust-

ment and on its imposition of the terms of "inactive" supervised release on both Nash and Ravoy and remand for resentencing in a manner consistent with the statute and this opinion.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.